We'll move to our last case of the day, Case Number Six. This is Division Six Sports v. Finish Line, Inc. Appeal Number 19-1070. We'll begin with Ms. Schrader. Thank you, Your Honor. May it please the Court. Division Six Sports appeals the dismissal of its suit against Finish Line before any answer is filed, before any discovery is taken, because based on the material in the record, one cannot find, as a matter of law, that the party's contract admits to only one single reasonable interpretation, and that interpretation was Finish Line's, that the contract terminated on December 31, 2013. Let's look at the contract. This is defined the governing documents. The governing documents are four things. It's the original 2001 agreement. There is an amendment in 2002, a First Amendment, a Second Amendment in May of 2003, and then a Third Amendment in September of 2008. And these are defined by the parties as the governing documents. The agreement here recognized the understanding, the terms and the extension of the terms, recognized the symbiotic relationship between these two parties. In the late 1990s, Division Six pioneered a system to monetize excess inventory, damage goods, return goods, aging, end-of-season goods. So every Finish Line sells merchandise, Nike, Adidas, Reebok, everyone knows what a Finish Line is, and they will have customer returns, they will have damaged items, they will have shortage issues, one shoe perhaps being left, and they will have every time. There is a constant turnover in these stores as the seasons go one by one, when the seasons for the various products. Division Six pioneered a way to provide a supply solution for retailers like Finish Line, and in 1999, Finish Line starts its relationship with Division Six. They have a letter agreement, and this is more formalized two years later in 2001. And as I said, this is modified three times over the course of the party's relationship to date. The way that the modification goes is a little bit different. The contract provided that any modification has to be in writing. So what happened in all three of these instances is Finish Line would write a letter, and it would write that letter to Division Six, it would propose what would be these modifications, and if Division Six wanted to continue with the relationship, Division Six was to sign the agreement, and then it was also signed by Finish Line. When you look at the changes, this wouldn't be a textbook on how to modify a contract for sure. When we look at how these changes and the different language that's used, in the very first modification, they're amending the pricing schedule, and they use the terms, we're going to add this schedule and replace. So we have adding and replacing. They're also changing parts of the chargeback section and the payment section, and the language that's used there is we're going to amend the agreement to reflect the following. Not quite sure what that means? Well, you have to go back to the contract. You have to read what's in the change, and in those cases, clearly what is happening here is the prior paragraphs are being deleted, and they're being replaced. There's also, in the very first modification, they make a change to the term of the agreement, and the issue here today is the term of the agreement. So originally, there is a term. It's an 18-month term in 2001. Now, importantly, as I said, there's a symbiotic relationship. Finish line every day creates more and more excess inventory that it has to get rid of, and Division VI, as a company that has a system to repackage these things and sell them abroad, has a need for inventory. So the parties have an agreement that says there's going to be a right of first refusal. At some point in the agreement, there's a right of first refusal. Division VI can meet it, and if Division VI does not meet it or there is not an offer for a different supplier, then the agreement is going to automatically renew. So in 2001, 18-month term, right of first refusal, and the renewal is 18 months. When the parties first modify the term, and I went through some of them, adding to replace, amending, meaning delete and replace, they also address the contract term. But it doesn't look like the other amendments. If you look at the letters, whether it be the pricing schedule, there's a separate pricing schedule that's part of the letter. Or whether it is the chargebacks under 7B or the payment section, finish line has put the contract language in there. Now there might be some question of does it replace, does it get sandwiched in there, because it's not at all clear given the interchangeable language that's being used. But for the contract extension term, what they say is the parties are amenable to adding language to reflect. There's not a proposed contract term. Just that the parties are amenable to adding language to reflect. The first time they do this, the original 18-month auto renewal provision has not been exercised. It hasn't been touched. But what they decide to do is they're going to extend the term from 18 months to three years. And also they're going to change that renewal provision from 18 months to three years as well. Importantly, and this is reflected in all three of those contract modifications, they say that both parties agree that no other provision of the agreement shall be modified and that all the other terms and conditions of the agreement shall remain in full force and effect and are hereby reaffirmed by the parties. And they go through this two more times. In the second time, the term provision isn't touched. But again, we have changing where we're going to add something, which means we're going to replace and the language is there. And there's additional changes to 7B and 8A where the language says that the provision will be amended to reflect. And given the context, it can only be that paragraphs are replacing. And those are fully formed contractual paragraphs in that letter. You're at your rebuttal. Would you want to reserve some time or keep going? I will reserve the remainder of the time. Thank you, Ms. Schrader. We'll now move to the appellee, Mr. Hull. Good afternoon, Your Honors. May it please the Court, Andy Hull and my colleague, Christopher Wagner, on behalf of the Finish Line, Inc. Finish Line asks that this Court affirm the District Court's order of dismissal in response to the motion to dismiss below and also affirm the order ruling in opposition to the motion to amend the judgment. That latter motion proposed yet a new theory on the part of Division VI, urging a different construction of the contract. The party's contract unambiguously expired on December 31, 2013. Following expiration, there can be no breach. And it is post-expiration conduct about which Division VI tries to fashion its breach of contract claim. Throughout the entirety of the party's contract, the party specifically described, specifically defined, each durational term. And if there was a right of automatic renewal associated with that specifically defined term, the party specified that right of automatic renewal. For example, at the outset of the contract, the party's defined the term in the 2001 agreement to mean a specific 18-month period beginning March 1 of 2001 through September 1 of 2002. The agreement provided for a single 18-month automatic right of renewal from that defined durational term. The parties in 2002 negotiated the 2002 amendment. They created a new extended term of three years, which expressly ran through August 31 of 2005, with an automatic three-year extension to August 31 of 2008 if no bonafide arm's-length offer was received by finish line within six months of said extended term. A single right of renewal following said extended term, the three-year term established in the 2002 amendment. The parties performed under the 2002 amendment, and the parties also performed under that three-year automatic renewal. Thereafter, in 2008, the parties negotiated the 2008 amendment, and they created the third amendment extended term, a defined term, commencing September 1, 2008 and ending on December 31 of 2013. The argument that Division VI now advances is that there was something about the language of the 2008 amendment that revived, breathed life into the limited singular auto renewal in the 2002 amendment, which was specifically tied to the then-existing defined said extended term. There's no support for that proposition anywhere in the 2008 amendment. The 2008 amendment provides no right of first refusal. It provides no right of automatic renewal. It provides no language whatsoever indicating the parties having an intent to revive an exhausted right of automatic renewal that existed in the 2002 amendment. There's simply no support for the new construction that Division VI is now urging on appeal. The 2002 and the 2008 amendments both add language as relates to the durational term. That makes plain and perfect sense. The durational terms had expired in the 2002 amendment, for example, so new language is added. There's nothing to be deleted. There's nothing to be replaced. Language is added. Were the parties intended to replace or delete language as they did in connection with the pricing provisions, Section 2C, the parties used replace or delete in different contexts. In substance, there's simply no ambiguity whatsoever to be found, and we would ask this Court to affirm the district court in all respects. I'm pleased to receive any questions. Well, as far as December 31, 2013, you're saying anything after that, there's been no amendment. That's right. I guess that's where there's some disagreement? Yes. It is the contention of Division VI that following the express termination of the contract under the 2008 amendment that a right of automatic renewal, which existed in the 2002 amendment and was exercised by the parties, somehow came back into being and provided for some additional right of automatic renewal. Now, the district court had a pretty detailed opinion. It did, too, actually, Your Honor. Yeah, right. So when we're looking at this kind of contract and all these details and twists, a couple of added words, as I think the district court pointed out, doesn't work. That wasn't a proper amendment. I don't quite understand all the details that were negotiated, but that seems to be what happened here. There was not another amendment, therefore, that expires at 2013. That is absolutely correct, Your Honor. The district court noted, and we've argued in our brief, that this court's decision in Bartell v. NBC Studios recognizes that where the parties specifically define durational terms, those specifically defined durational terms are to be given the meaning that the parties intended by the plain language at the time that the parties contracted. And in each instance of contracting here, in 2001, 2002, and 2008, the parties were specific about the durational terms, dates of commencement, dates of termination, the duration of the terms. And there's nothing to be found anywhere in the contract that created a new or additional automatic right of renewal. Thank you, Mr. Hall. Thank you, Your Honor. Ms. Schrader, rebuttal. Thank you. I want to take issue with the argument that all of the terms here, including the most important one that has to do with automatic renewal, are anchored terms and anchored to particular dates. Please review the Bartell case. It is not on all fours here. In Bartell, yes, like the term of the agreement was anchored to particular dates, but the auto renewal provision was not. They could have. And, in fact, when Finish Line put together its version of how it thought this contract looked, because, of course, we don't know, excuse me, Division VI did, we don't know what it looks like because Finish Line never and Division VI never agreed on particular language. Our argument here is, our alternative argument is that the ambiguity requires, the ambiguity here is manifest and cannot be, you cannot pick a winner there on a motion to dismiss. But if you look at the version that Finish Line put together in page 19 of its, or excuse me, page 7 of its reply brief, Finish Line also put together a version of the agreement on page 19 of their brief. The renewal, the language in the letters that modified the agreement said set extended term. There were no dates, but when Finish Line proffers to you their version of the contract, they don't use set extended term. They substitute end of the three-year extension of the agreement, and then just for good measure, they throw in a parenthetical that says that is through August 31st, 2005. At this point, it's clearly a tacit admission that the actual language of that contract could be anything. The district court had an interpretation, Finish Line had an interpretation, and Division VI had an interpretation. As to this issue that the 2008 amendment breathed life into the renewal, this is ignoring the clear language in those amendments. Each one of those three amendments said very clearly, any provision that is not modified stays in existence, and the parties reaffirm it. The parties reaffirm it because it was necessary to their business model. Thank you, Ms. Schrader. Thank you. Thank you, Mr. Hall. The case will be taken under advisement. That will complete our work for the day, and the court will stand in recess.